IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,        :
                                 :
         Plaintiff,              :
                                 :
    v.                           :  Criminal Action No. 09-25-JJF
                                 :
CHAS BOYD,                       :
                                 :
         Defendant.              :
                                 :

David C. Weiss, Esquire, United States Attorney, and Ilana H. Eisenstein, Esquire, Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.

Attorneys for Plaintiff.

Edson A. Bostic, Esquire, Federal Public Defender, and Eleni Kousoulis, Assistant Federal Public Defender, of the FEDERAL PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware.

Attorneys for Defendant.

**O P I N I O N**

September 1, 2009
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is a Motion to Suppress Physical Evidence (D.I. 14, No. 09-25-JJF) filed by Defendant, Chas Boyd. For the reasons discussed, the Court will deny Mr. Boyd's Motion without an evidentiary hearing.

I. **BACKGROUND**

On February 24, 2009, Defendant, Chas Boyd, was indicted on three counts. Mr. Boyd was indicted on one count of possessing, with the intent to distribute, fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 942(a)(2). On April 3, 2009, Mr. Boyd filed the instant Motion.

By his Motion to Suppress, Mr. Boyd contends that the search of his vehicle was unlawful because there was no reasonable suspicion or probable cause to support the stop of his vehicle. (D.I. 14, ¶ 5.) Mr. Boyd states that no traffic violations occurred and contends that the Government's preliminary response to his Motion reveals that there are factual issues that can only be resolved after an evidentiary hearing. (D.I. 20 at 6-7.)

1

The Government contends in its Preliminary Response to Defendant's Motion to Suppress, (D.I. 15), that the stop and arrest of Mr. Boyd was supported by probable cause based on the arresting officers' personal observations of Mr. Boyd preceding and subsequent to the stop, as well as by their knowledge that Mr. Boyd was driving with a suspended driver's license. (Id.) The Government further contends that Mr. Boyd has not demonstrated a *factual* basis for relief, and therefore, the Court should deny his Motion to Suppress without an evidentiary hearing. (Id. at 4.) In its Supplemental Brief Opposing Evidentiary Hearing on Defendant's Motion to Suppress, (D.I. 21), the Government underscores the conclusory nature of Mr. Boyd's allegations and cites a number of cases, both from within the Third Circuit and from other jurisdictions, in support of its contention that it is within the Court's discretion to deny an evidentiary hearing in the circumstances present here. See id. at 4-11.

## II. DISCUSSION

### A. Whether an Evidentiary Hearing on Defendant's Claims is Required

Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure requires that a motion to suppress evidence be brought before trial. F. R. Crim. P. 12(b)(3)(C). However, Rule 12 does not specify when a motion to suppress evidence entitles a defendant to a pretrial evidentiary hearing.

2

As a general matter, the Third Circuit has required an evidentiary hearing in circumstances in which a defendant advances a "colorable claim" that his or her constitutional rights have been violated. United States v. Brink, 39 F.3d 419 (3d Cir. 1994) (holding that district court erred in failing to hold an evidentiary hearing where the defendant stated "a colorable claim that the government violated his constitutional right to counsel by placing him in a cell with a known informant who may have been acting as a government agent"). In United States v. Voigt, 89 F. 3d 1050 (3d Cir. 1996), the Third Circuit elaborated on what a "colorable claim" is, stating that a claim is "colorable" if it consists "of more than mere bald-faced allegations of misconduct." Voigt, 89 F.3d at 1067 (citing United States v. Sophie, 900 F.2d 1064, 1071 (7th Cir. 1990), cert. denied, 498 U.S. 843 (1990)).  Thus, to warrant an evidentiary hearing, a defendant's motion must contain "issues of fact material to the resolution of the defendant's constitutional claim." Voigt, 89 F.3d at 1067.

In Voigt, the Third Circuit considered whether the district court should have held an evidentiary hearing on Voigt's motion to dismiss the indictment. In his motion, Voigt alleged that "the government infringed his Fifth Amendment right to due process by recruiting his attorney as a government informant." Id. at 1061. In support of his allegation, Voigt presented

evidence suggesting an improper relationship between Mercedes Travis, his attorney, and FBI Special Agent Alvin Powell. Specifically, Voigt presented "(1) Agent Powell's affidavit, to which contemporaneous notes of his contacts with Travis were attached as exhibits; (2) Voigt's affidavit, in which Voigt claimed that Travis had been his attorney and the Trust's attorney from the summer of 1990 through June of 1993; (3) Travis' affidavit; and (4) Travis' and Powell's grand jury testimony." Voigt, 89 F.3d at 1067. In concluding that this evidence was sufficient to present a colorable claim, the Third Circuit stated that "[a]lthough the issue is a close one . . . we think the district court should have conducted an evidentiary hearing," because "Voigt's moving papers raised enough of a specter of ethical impropriety on the Government's part to warrant closer scrutiny." Id. at 1067. The Third Circuit further explained:

> Even the district court, skeptical though it was as to the *degree* of purposeful intrusion, believed that whatever factual disputes existed on that issue would be resolved at trial. This was an acknowledgement [sic] by the court that there were *some* disputed factual issues raised by Voigt's motion that needed to be resolved. Since the government itself notes that suppression of evidence is a more appropriate remedy than dismissal of the indictment, factual determinations that can lead to suppression logically should be resolved at an evidentiary hearing conducted prior to trial.

Id. at 1067-1068 (emphasis in original).

4

Although the <u>Voigt</u> case presented a different procedural posture than this case, its holding and reasoning are helpful. See <u>id.</u>  The Third Circuit noted that the defendant's moving papers and attached affidavits were sufficient to raise "factual disputes," <u>id.</u> at 1067, and "factual issues," <u>id.</u>, that required the district court to make "factual determinations," <u>id.</u> at 1068, most appropriately resolved before trial.

Other circuits likewise require a defendant to raise significant factual disputes in order to receive a pretrial evidentiary hearing.  The Seventh Circuit has held that "[a] district court does not have to hold an evidentiary hearing on a motion just because a party asks for one.  An evidentiary hearing is necessary only if the party requesting the hearing raises a significant, disputed factual issue." <u>Sophie</u>, 900 F.2d at 1070-71 (responding to a defendant's claim that "the district court erred by not enforcing an alleged plea agreement between him and the government, or, at least, holding an evidentiary hearing to determine whether the alleged agreement existed").  Similarly, the First Circuit has stated that "[t]he test for granting an evidentiary hearing in a criminal case should be substantive: did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?" <u>United States v. Panitz</u>, 907 F.2d 1267, 1273-74 (1st Cir. 1990) (citing <u>Franks</u>, 438 U.S. at 155-56, in response to defendant's outrageous government action

5

claim). The Second Circuit has also held that a defendant must present "sufficiently detailed and controverted factual allegations" in order to receive an evidentiary hearing. United States v. Wojtowicz, 550 F.2d 786, 790 (2d Cir. 1977) (responding to defendant's request for an evidentiary hearing on his claim of incompetency). In a case similar to this case, the Ninth Circuit held that because the defendant "did not raise a factual dispute in his motion, the district court did not abuse its discretion in denying him a hearing." United States v. Soberanis, 113 Fed. Appx. 778, 779 (9th Cir. 2004) (not precedential) (defendant moved to suppress evidence obtained as a result of an investigative traffic stop related to a bank robbery).

Following the reasoning of such decisions, the Court denied an evidentiary hearing in United States v. Foster, 287 F. Supp. 2d 527 (D. Del. 2003) stating:

> The burden is on the defendant to establish the necessity for the hearing. U.S. v. Rodriguez, 69 F.3d 136, 141 (7th Cir. 1995). "That burden can be met only upon the presentation of 'definite, specific, detailed, and nonconjectoral' facts." Id. A district court may deny a defense motion to suppress without a hearing, if the motion fails to meet this standard. Voigt, 89 F.3d at 1067-8.

Foster, 287 F. Supp. 2d at 529.

Applying the rationale of the aforementioned cases to the circumstances presented here, the Court finds that Mr. Boyd has failed to present factual assertions tending to challenge the arresting officers' version of the events leading to the stop of

6

his vehicle. Instead, Mr. Boyd asserts a conclusory challenge to the Government's account without factual support, either by affidavits or otherwise. On this record, the Court concludes that Mr. Boyd has not stated a colorable claim that his constitutional rights were violated, and therefore, the Court concludes that an evidentiary hearing is not required to resolve Mr. Boyd's Motion to Suppress.

    B.    <u>Facts Asserted By The Government</u>

    1.    On February 4, 2009, Detective Joshua Wilkers and other officers involved with Operation Safe Streets were performing surveillance on an individual matching Mr. Boyd's description who was operating a white Oldsmobile in Wilmington, Delaware. Operation Safe Streets is a joint task force of the Wilmington Police Department and Delaware Probation and Parole Officers who investigate the activities of persons on court-ordered supervision. (D.I. 15 at 2.)

    2.    Detective Wilkers and the other officers were surveilling this individual based on two anonymous reports that a person named Chas Boyd was selling drugs in the 900 block of Spruce Street in Wilmington. One of the reports indicated that Mr. Boyd was on probation. Detective Wilkers confirmed that Mr. Boyd was a Level III probationer with a suspended driver's license after running a search in the Delaware Criminal Justice Information System database. (<u>Id.</u>)

7

3.   During the course of the surveillance, officers observed the white Oldsmobile commit two violations of the Delaware Motor Vehicle Code.  First, the driver stopped the Oldsmobile in the middle of the street on the 600 block of North Scott Street and impeded the flow of traffic, in violation of 21 Del. C. § 4171(a).[1]  Second, the automobile's rear license plate had a tinted cover, in violation of 21 Del. C. § 2126(c).[2]  (Id.)

4.   The officers initiated a traffic stop of the Oldsmobile on the 400 block of North Dupont Street.  The officers identified the driver as Chas Boyd.  The officers observed Mr. Boyd reach around in the area of the center console as they approached the vehicle.  (Id. at 2-3)

5.   The officers arrested Mr. Boyd for driving with a suspended driver's license and cited him for the Motor Vehicle Code violations.  A search of the Oldsmobile was conducted, resulting in the recovery of the following from the center console area: approximately 114 grams of crack cocaine, a loaded

---

[1] 21 Del. C. § 4171(a) provides: "No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law."

[2] 21 Del. C. § 2126(c) provides: "No number plate, or any portion thereof, shall be covered with any tinted material, nor shall any other material be placed on or around a number plate which would conceal and/or obscure any information contained thereon, including the registration expiration sticker. Plate frames that do not conceal and/or obscure any information contained on the plate, including the registration expiration sticker, are not prohibited by this section."

handgun, a digital scale, and Mr. Boyd's college identification card. (Id. at 3.)

    C.   Conclusions of Law

    1.   The Fourth Amendment to the United States Constitution protects "the right of the people to be secure against unreasonable searches and seizures. . . ." U.S. CONST., amend. IV.

    2.   Police are vested with the constitutional authority to conduct a limited, warrantless, investigatory stop in a public place if an officer has a reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 (1968). During a Terry stop, the temporary detention of individuals constitutes a "seizure" within the meaning of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809 (1996).

    3.   Reasonable suspicion to initiate a Terry stop requires that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). While Fourth Amendment jurisprudence demands particularized suspicion, courts also recognize that officers must be allowed "to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273

(2002). Reasonable suspicion is to be viewed from the vantage point of a "reasonable, trained officer standing in [the detaining officer's] shoes." Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003). Whether the police have reasonable suspicion is determined from the totality of the circumstances. Cortez, 449 U.S. at 417.

    4.   In this case, Mr. Boyd challenges the legality of his stop under the reasonable suspicion standard announced in Terry and its progeny. Specifically, Mr. Boyd contends that there was no reasonable suspicion or probable cause upon which to stop the white Oldsmobile he was driving when Detective Wilkers and the Operation Safe Streets officers stopped and arrested him. (D.I. 14, ¶ 5.) Mr. Boyd argues this was so because he had not violated any traffic laws when the officers stopped him, (D.I. 20 at 7), but he does not provide any factual information in support of his claim. (See D.I. 14; D.I. 20.) Mr. Boyd does not challenge the legality of the search specifically; he only challenges the legality of the stop which gave rise to the search.

    5.   Reviewing the documents and briefs submitted by Mr. Boyd and the Government, the Court concludes that the stop and subsequent arrest of Mr. Boyd were supported by reasonable suspicion and probable cause, respectively. The arresting officers observed Mr. Boyd commit two violations of Delaware

traffic laws before stopping his vehicle. Mr. Boyd challenges the Government's assertion that he violated Delaware state traffic laws, but he provides no facts in support of his position. Mr. Boyd also does not challenge the Government's statement that Detective Wilkers and the other arresting officers knew Mr. Boyd was a Level III probationer and was driving with a suspended driver's license at the time they stopped and arrested him. Based on the facts asserted by the Government, the Court concludes that Mr. Boyd's stop was supported by reasonable suspicion, that his arrest was supported by probable cause, and that Mr. Boyd has not presented facts tending to contradict the Government's account and establish a colorable claim for relief.

## III. CONCLUSION

For the reasons discussed, the Court will deny Mr. Boyd's Motion to Suppress Physical Evidence.

An appropriate Order will be entered.